# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-851V
UNPUBLISHED

| | |
|---|---|
| ANALICIA GUERRERO,<br><br>                     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                     Respondent. | Chief Special Master Corcoran<br><br>Filed: October 27, 2022<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Ruling on the Record; Findings of Fact; Onset; Human Papilloma Virus (HPV) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, for petitioner.

*Mark Kim Hellie*, U.S. Department of Justice, Washington, DC, for respondent.

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On July 13, 2022, Analicia Guerrero filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by a human papillomavirus ("HPV") vaccine administered on September 25, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below I find that Petitioner is entitled to compensation, and I award **$71,181.65** in total damages.

## I.   Relevant Procedural History

Petitioner filed this claim on July 13, 2020, followed by medical records and a statement of completion on July 14, 2020. ECF Nos. 1, 6, 7, 9. On November 30, 2020, Respondent filed a status report stating that he had conducted a preliminary review of the case and did not identify any medical records that appeared to be missing. ECF No. 16. The only issue identified as possibly disputed was onset. Petitioner filed additional records and an amended statement of completion on February 2, 2021. ECF Nos. 18-20.

On February 5, 2021, based on Respondent's assessment, Petitioner's evidence, and my own review of this case, I deemed the case appropriate to remain in SPU. ECF No. 22. I ordered Petitioner to begin preparing a demand, and stated that if this case remained unreviewed by the summer (around the time of its one-year filing anniversary), Petitioner would be allowed to file a motion for a ruling on the record.

Because the July 2021 date arrived with no resolution, Petitioner filed a motion for a ruling on the record and brief in support of damages on July 25, 2021. Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Mot."), ECF No. 30. Petitioner argues therein that she meets the table definition of a SIRVA (*id.* at 28) and requests an award of $95,000.00 for actual pain and suffering, plus $4,392.93 for unreimbursed out-of-pocket expenses. *Id.* at 43.

Respondent opposed the motion on August 24, 2021. Respondent's Rule 4(c) Report and Response to Petitioner's Motion for a Ruling on the Record ("Opp."), ECF No. 33. Respondent argues that Petitioner failed to meet the requirements of a Table claim. Opp. at 10-13. Respondent also objects to responding to Petitioner's damages claim, arguing it is premature, but proposing that an award of $55,000.00 for pain and suffering was more appropriate in this case. *Id.* at 13, 15. Respondent also objects to Petitioner's out-of-pocket expenses. *Id.*

Petitioner filed a reply on September 7, 2021, addressing Respondent's arguments. Petitioner's Reply Brief in Support of Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Reply"), ECF No. 34.

## II.   Petitioner's Medical Records

Petitioner is a flight attendant for Delta Airlines. *See* Ex. 4 at 264. On September 25, 2018, she saw her gynecologist, Dr. Shultz, and received an HPV vaccine. Ex. 1 at 19. The vaccination record does not specify in which arm received the vaccine. Ex. 1 at 19, Ex. 2 at 6.

Petitioner first reported right shoulder pain on October 26, 2018, stating in an injury record to Delta Airlines of "having month long discomfort" in her right shoulder. Ex. 28 at 1-2. Petitioner reported "no exact time or Mechanism of injury" and that "[t]here [sic] weeks ago it bothered her much more but has progressively gotten better…." *Id.* at 1. Petitioner's range of motion was noted as "fine actively with no limitations," and she was assessed with right "shoulder discomfort; possible RTC [Rotator Cuff] Strain." *Id.* at 2. A few days later, on October 30, 2018, Petitioner saw her counselor, Tammy Feigal, and reported shoulder pain in the rotator cuff area resulting in her stopping weightlifting. Ex. 29 at 1, 2.

Petitioner began a workers compensation claim on November 16, 2018. Ex. 4 at 264. In the injury report, she stated that the date of injury was October 4, 2018 (which if true would not be consistent with the Table onset requirement), and that she finished a trip and started to notice pain in her right shoulder and upper arm. *Id.* She also stated that her pain level was 6-7 out of 10 based on certain motions, 3 out of 10 at rest, and constant pain in the "upper back at shoulder blade" with limited range of motion. *Id.* at 267.[3]

Later that day, Petitioner saw Christina Lester, N.P., for right shoulder pain. Ex. 5 at 15. Petitioner reported the pain started the first week of October, and that her shoulder felt tight, achy, with occasional shooting pain to the elbow and wrist. An examination showed full strength and a normal range of motion but pain with certain movements. *Id.* at 16. X-rays were ordered but unremarkable. *Id.* at 46. Petitioner was assessed with muscle spasms, right shoulder pain, right arm pain, and neck pain. *Id.* at 16. She was prescribed baclofen, prednisone, and referred to physical therapy.

Petitioner started physical therapy on November 21, 2018. Ex. 6 at 16. With regard to onset, Petitioner now reported it was gradual, with an unknown cause. *Id.* at 16. She also described the pain as sharp and aching, rating it as 3/10. *Id.* Petitioner then saw NP Lester on November 23, 2018, for an "[i]njury to shoulder. [H]ere for work comp. [N]eeds paper work filled out to go back to work." Ex. 5 at 18. Petitioner reported worse pain at that time and muscle spasms. *Id.* at 19. She was told to continue with physical therapy and given medications for pain. *Id.*

On November 29, 2018, Petitioner saw her gynecologist, Dr. Schultz. Ex. 1 at 24. She reported that she had "severe arm pain from work injury and maybe HPV vaccine (occurred same day)…." Ex. 1 at 24.

Petitioner saw NP Lester on November 30, 2018, for a follow-up regarding her right shoulder. Ex. 5 at 21-22. Petitioner reported pain at that time and stated she "doesn't feel

---

[3] Petitioner's workers compensation claim was accepted, and benefits were paid on December 3, 2018. Ex. 4 at 203.

that she can go back to work [because] whenever she pushes/pulls/reaches that she irritates the muscle." *Id.* at 21. She was told to continue with physical therapy and referred Petitioner to chiropractor. *Id.* at 22.

On December 7, 2018, Petitioner presented to Christie M. Halbe, D.C. for chiropractic treatment due to "a work injury October 2018." Ex. 7 at 38. Petitioner reported that, while her range of motion had improved with physical therapy, her pain had not, describing it as 3/10. Ex. 7 at 38. Stated injury from work injury. Ex. 7 at 38-40.

Petitioner met with her counselor on December 10, 2018. Ex. 29 at 1, 3. She reported she was attending physical therapy for her "shoulder/arm" and indicated she received a vaccine that resulted in extreme nerve pain. *Id.* at 3. Petitioner again saw NP Lester on December 21, for a follow-up regarding her right shoulder. Ex. 5 at 26-28.[4] She reported that she was improving (at least 60-70% improved at that time) but could still not return to work. *Id.* at 27.

Between November 21, 2018, and January 3, 2019, Petitioner also attended six physical therapy sessions. Ex. 6 at 16-23. During that time, her pain and symptoms decreased and she "'improved significantly' since beginning therapy." *See id.* at 12 (record from November 29, 2018, reporting her symptoms were slightly better and "[s]ome days she [had] been nearly symptoms free."); *id.* at 9 (record from December 7, 2018, stating "overall improvement"); *id.* at 6-7 (record from December 14, 2018, describing pain levels at between 1-3 out of 10); *id.* at 4 (record from January 3, 2019, noting that Petitioner was "about '85%' back to normal" with pain levels described as 2/10).

On January 10, 2019, Petitioner saw Dr. David Fey, an orthopedic surgeon, for right neck and shoulder pain. Ex. 8 at 5.[5] Petitioner reported that she was "not aware of any specific injury", but that she works "as a flight attendant for Delta and she is relating her symptoms to that work activity." *Id.* at 5. An exam showed full strength and a "full active range of motion of the right and left shoulder although a sense of a very slight decreased internal rotation of the right vs. left with some slight tightness." Ex. 8 at 6-7. An MRI of Petitioner's cervical spine was unremarkable. *Id.* at 8.

Petitioner attended eight more chiropractic session in January 2019. Ex. 7 at 6-21. She showed general, gradual improvement, with some continued weakness. See, e.g., *id.* at 14 (record from January 10, 2019, stating that "overall she improved quite a bit" but still had discomfort and weakness in her shoulder); *id.* at 6 (record from January 24, 2019,

---

[4] NP Lester noted that this Petitioner was seen for an injury to her shoulder and "workers compensation follow up…." Ex. 5 at 26.

[5] Dr. Fey noted that the evaluation was "a work comp claim 10/4/18."

4

stating "Patient presents today continuing to improve overall" but that her "right arm is still not as strong as it used to be").

On February 4, 2019, Petitioner returned to Twin Cities Orthopedics. Ex. 8 at 14. She again reported that the onset of her symptoms "was around the first week of October 2018" and was related to her work as a flight attendant. She also reported that her symptoms improved immensely over the past few months, rating her pain as 1 out of 10. *Id.* Later that same month, Petitioner attended her last chiropractic treatment with Dr. Halbe on February 18, 2019. Ex. 7 at 4. At that time, she stated "that she feels she is prior to injury status" with no pain but "slight tension" in her right upper back. *Id.*

On February 18, 2019, Petitioner saw PTA Brynne Ambroz at Twin City Orthopedics. Ex. 8 at 10. Petitioner reported that she "feels she is back to normal" and rated her pain as 1 out of 10. *Id.* 2.

Approximately three months later on May 7, 2019, Petitioner began treating with chiropractor Benjamin Sevlie for various ailments, including upper back pain, arm pain, arm discomfort, and difficulty sitting down. Ex. 9 at 12. The intake form completed by Petitioner states "[g]iven vaccine improperly – hit a nerve". *Id.* at 18. She now noted her pain was not constant and characterized it as mild (3 out of 10). *Id.*[6]

Petitioner attended another physical therapy sessions on May 30, 2019. Ex. 10. She reported that she continued to have pain in her elbow and weakness. *Id.* at 4. Petitioner also stated that she received a vaccination in September of 2018 and had experienced shooting pain down her arm. *Id.*

Several months later, on November 11, 2019, Petitioner saw Susan Haase, CNP, for a preventive health visit. Ex. 12 at 6. She reported that she received an HPV vaccine in September of 2018 and "has had pain in the shoulder since that time…." *Id.* She was later seen by an orthopedic specialist, Siatta Dunbar, for "chronic posterior arm/tricep pain that radiates into her hand that began acutely after Gardasil [] injection." Ex. 13 at 4. The record also states that Petitioner "[h]ad significant shoulder pain and lack of motion for 1 month after the injection and now is continued with persistent but inconsistent pain." *Id.* X-rays of the cervical spine were unremarkable, and Petitioner was diagnosed with right cervical radiculopathy, other mononeuropathy, and right arm numbness. Ex. 13 at 4.

Following an EMG study on January 6, 2020, Petitioner saw neurologist Joel Gedan. Ex. 14 at 4. Dr. Gedan found that Petitioner's EMG results were consistent with a "very mild chronic or old injury" to her right radial nerve. Ex. 14 at 4.

---

[6] Petitioner saw Dr. Sevlie fifty-one times between May 7, 2019 and March 11, 2020. Ex. 9 at 3-12

5

Between November 4, 2020, and March 25, 2021, Petitioner was seen for additional chiropractic care related to upper back, neck, and low back pain with sciatic radiation by Erik Coombs, D.C. Ex. 30 at 32, 61-84.

### III.     Affidavit Evidence

Petitioner submitted two affidavits in support of her claim. Ex. 3 and 21. Petitioner asserts that she experienced instantaneous pain when the HPV vaccination was administered on September 25, 2018. Ex. 3 at 3. Petitioner stated that her pain worsened as her range of motion decreased. *Id.* at 3. She also states that she filed an "on-the-job injury" report on November 16, 2018, because her symptoms and pain were worsening when she performed basic job-related tasks. *Id.* at 4. Further, Petitioner claims conversations with her medical providers "made [her] second guess that the vaccine was the cause of [her] problems" and she did not know if her pain was related to "any incident at work" so decided to file the injury report. *Id.* at 5. Petitioner states that when her symptoms continued that she told Dr. Halbe of her experience with the vaccine. *Id.*

Petitioner submitted another affidavit on January 26, 2021. Ex. 21. Petitioner asserts that she mentioned how painful her HPV vaccination was to her roommate on September 25, 2018, but that she expected it to pass "in a few days." *Id.* at 2. Petitioner further described how her symptoms worsened soon after her vaccination. *Id.* at 3-4. Additionally, Petitioner stated that she informed several people of her right shoulder pain, including her mother, sister (Mandi Potter), friend (Jenna Rains), and Jeffri Foster (a workout accountability partner). *Id.* at 4. Petitioner attached text messages to corroborate her affidavit. *See*, *e.g.*, *id.* at 11 (message on October 15, 2018 to Jeffri Foster stating "about 3 weeks ago, I got that HPV shot" and "my arm has been so messed up…. I can barely move it or hold weight at times"); *id.* at 12 (messages on October 17, 2018 indicating Petitioner was discussing her shoulder pain with her mother and linking it to a vaccination); *id.* at 13 (message from October 17, 2018 from Petitioner to Mandi Potter stating that Petitioner got the HPV vaccination and her "arm hasn't been the same since"); and *id.* at 14 (message from October 17, 2018 from Petitioner to Jenna Rains stating Petitioner got the HPV vaccination and her "arm hasn't been the same since").

Petitioner also stated that she filed for workers compensation because her injury was made worse by work, which is an applicable criterion for a claim. Ex. 21 at 6-7. Petitioner asserts that she indicated her injury began on October 4, 2018 "because that was the first day at work that I felt my basic job duties were worsening my preexisting vaccine shoulder pain and injury." *Id.* at 7.

Petitioner filed six affidavits on February 2, 2021, including affidavits from: Petitioner's mother, Tina Guerrero (Ex. 22); Petitioner's father, Wenceslao Guerrero (Ex. 23); a friend and fellow flight attendant, Molly Marriot (Ex. 24); Petitioner's friend Emily Pratty (Ex. 25); Petitioner's roommate at the time she received the HPV vaccination, Kylie Breezley (Ex. 26); and Jeffri Foster (Ex. 27). These affidavits attempt to corroborate the onset and course Petitioner's treatment.

Additionally, Mr. Guerrero's affidavit explains that he was an insurance claims adjuster for 40 years and "for the last 30 years, [he] solely handled worker's compensations claims." Ex. 23 at 1. Further, because experiencing an aggravation or worsening of a preexisting injury is grounds for a claim, Mr. Guerrero encouraged Petitioner to file a worker's compensation claim. *Id.* at 3-4. According to Mr. Guerrero, Petitioner "never filed for workers compensation benefits because she believed her shoulder injury was solely caused by her employment" but that "her employment may have aggravated her shoulder injury…." *Id.* at 4.

### IV.   Parties' Arguments

Petitioner requests that I issue a ruling finding that she is entitled to compensation for a SIRVA as described in the Vaccine Injury Table. Mot. at 43. Respondent argues that Petitioner has failed to show she suffered a Table claim because onset of her injury was not within 48 hours of her vaccination, her pain was not limited to her shoulder but radiated down her right arm, and that another condition may have caused her symptoms. Opp. at 10-13.

### V.   Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[7] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

---

[7] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

7

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical

professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had no Prior Right Shoulder Condition or Injury

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent has not contested that Petitioner meets this criterion, and I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her right shoulder that would explain her symptoms. *See*

9

Ex. 3 at 1 (stating that Petitioner had no orthopedic issues in her right arm prior to her vaccination).

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The aforementioned medical records, coupled with Petitioner's witness statements and corroborating evidence, establish that she experienced symptoms within 48 hours of her vaccination. Ex. 1 at 24; Ex. 29 at 3; Ex. 10 at 4; Ex. 12 at 6; Ex. 21 at 2; Ex. 25 at 2; Ex. 26 at 1-2. Although Petitioner's showing is far from conclusive, and there is ample evidence going the other way, overall the relevant proof preponderates sufficiently in Petitioner's favor to find this element of the claim satisfied.

First, it cannot be meaningfully disputed that the records show that Petitioner reported shoulder pain *sometime* within a month of vaccination. The initial reports of shoulder pain occurred on October 26, 2018. Ex. 28 at 1-2. It is common for individuals who have experienced a SIRVA injury to delay seeking treatment, thinking the injury will resolve on its own, since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after. Indeed, Petitioner was told on several occasions that her pain was likely short-lived.[8] Here, delay was not appreciably long – and the fact that treatment was sought in a relatively short timeframe is supportive of a close-in-time onset.

Second, Petitioner began to affirmatively and repeatedly linked her shoulder pain to the HPV vaccine as early as November 29, 2018. *See*, *e.g.*, Ex. 1 at 24 (record from Dr. Schultz stating she had "severe arm pain from work injury and maybe HPV vaccine occurred same day); Ex. 29 at 3 (record from Petitioner's counselor stating she received a vaccine that resulted in extreme nerve pain); Ex. 9 at 18 (reporting in an intake form on May 7, 2019 to Dr. Sevlie that she was given a vaccine improperly); Ex. 10 at 4 (stating in physical therapy records that she received a vaccination in September of 2018 and had shooting pain down her arm); Ex. 12 at 6 (reporting to NCP Haase that she received an HPV vaccine in September of 2018 and "has had pain in the shoulder since that time").

Onset of Petitioner's injuries are corroborated by the text messages submitted by Petitioner linking her arm pain to the HPV vaccine and indicating she experienced arm pain since the vaccination. For example, Petitioner stated in a text message on October 15, 2018 (approximately three weeks after her HPV vaccination) that "about 3 weeks ago, I got that HPV shot" and "my arm has been so messed up…. I can barely move it or hold weight at times"). Ex. 21 at 12 (messages on October 17, 2018, indicating Petitioner was

---

[8] See, e.g., Ex. 21 at 2 (affidavit of Ms. Breezley stating she assured Petitioner that her pain would resolve).

10

discussing her shoulder pain with her mother and linking it to a vaccination); *id.* at 13 (message from October 17, 2018 from Petitioner to Mandi Potter stating that Petitioner got the HPV vaccination and her "arm hasn't been the same since"); and *id.* at 14 (message from October 17, 2018 from Petitioner to Jenna Rains stating Petitioner got the HPV vaccination and her "arm hasn't been the same since"). Additional evidence of onset is provided by affidavits of Ms. Breezley (Ex. 26 at 1-2 (Kylie Breezley stating that Petitioner complained of arm pain the day she received the vaccination)) and Ms. Pratty (Ex. 25 at 2 (Emily Pratty stating that Petitioner reported arm pain in early October following her vaccination)).

Respondent argues that Petitioner did not report her pain until more than a month after her vaccination, and repeatedly stated her pain began in October of 2018. Opp. at 10-11. Respondent cites to numerous records stating her shoulder injury occurred in early October – hence too long after the September 25th vaccination date. *See,* e.g initial injury report in worker's compensation records (ex. 4 at 264), statements made to NP Lester (ex. 5 at 15); Dr. Halbe's records (ex. 7 at 38), and Petitioner's orthopedic doctor's records (ex. 8 at 5). However, Petitioner explained that she was not more specific about the association temporally because she had questioned whether the vaccine could cause such an injury, based on conversations with medical providers. Ex. 3 at 5. Further, Petitioner also stated that her job-related tasks increased her pain and symptoms, and based on her understanding of worker's compensation, aggravation of a preexisting injury was appropriate grounds for filing a claim. Ex. 21 at 7; *see also* Ex. 23 at 3-4 (Mr. Guerrero's affidavit providing additional corroborating evidence).

Accordingly, and based upon the above, I find there is preponderant evidence that establishes the onset of Petitioner's right shoulder pain was more likely than not immediate, and thus within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Right Shoulder

I also find that there is a preponderance of evidence that Petitioner's pain was limited to her right shoulder.

Respondent argues that Petitioner reported pain that "shoots down her arm to the right hand," and was thus not limited to her shoulder. Opp. at 12 *citing* Ex. 8 at 5; Ex. 10 at 6; Ex. 13 at 4; Ex. 14 at 4. Even though the record does establish these instances of non-shoulder pain complaints, I generally credit Petitioner's argument that her pain originated in her shoulder and there is no other etiology or source of her injury. Reply at 4. And this is not a case where the bulk of Petitioner's complaints included an area broader than the shoulder region. On the contrary - the vast majority of records

concentrate on Petitioner's complaints and treatment for right shoulder pain. *See, e.g.*, Ex. 28 at 1-2 (Petitioner reporting "month long discomfort" in her right shoulder and assessed with possible rotator cuff strain), Ex. 5 at 15 (Petitioner reporting right shoulder pain, tightness."); Ex. 5 at 18 (Petitioner seen for "[i]njury to shoulder"). And to the extent that radiculopathy contributed to Petitioner's symptoms, subsequent testing either ruled it out or indicated it was very mild. Ex. 14 at 4.

At most, instances of complaints of pain in an area outside of the shoulder region are relevant to Petitioner's damages (since they would be likely or arguably distinguishable from the SIRVA). But they do not defeat an otherwise-meritorious SIRVA claim – especially where there is ample and preponderant evidence of consistent, primary shoulder pain. Accordingly, this element of the claim has been met.

### 4. There is No Other Condition or Abnormality That Would Explain Petitioner's Symptoms

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent argues that an EMG showed a very mild chronic or old injury to the proximal nerve, and several of Petitioner's doctors were concerned about radiculopathy. Opp. at 12-13.

Diagnostic tests do not affirmatively establish there was another condition or abnormality that caused Petitioner's symptoms. At best, there may be an additional comorbidity that contributed to Petitioner's pain, however that alone does not rule out the existence of a SIRVA. Further, just as above, evidence of a mild chronic or old injury are relevant to Petitioner's damages.

Thus, the record contains preponderant evidence establishing that there is no other condition or abnormality which would explain the symptoms of Petitioner's right shoulder injury.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly in her right shoulder on September 25, 2018, in the United States. Ex. 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 3 at 2; Section 11(c)(1)(E) (lack of prior civil award).

As stated above, I have found that the onset of Petitioner's right shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. Section 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). Further, Petitioner's pain was limited to her left shoulder and there are no other conditions that would explain her symptoms. Section 100.3(c)(10). Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of her SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her right shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). The records demonstrate, and Respondent does not contest, that Petitioner suffered the residual effects of her shoulder injury for more than six months. *See*, *e.g.*, Ex. 12 at 6 (records from November 11, 2019, reporting that Petitioner has had shoulder pain since her HPV vaccination). Thus, this requirement is also met.

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## VI.   Damages

The parties have also briefed damages in this case. Petitioner requests an award of $95,000.00 for actual pain and suffering, plus $4,392.93 for unreimbursed out-of-pocket expenses. Mot. at 1. Respondent argues that the record only supports an award of $55,000.00 for past pain and suffering. Opp. at 15. Further, because Petitioner has not provided documentation regarding what treatment was covered by worker's compensation, Respondent entirely disputes any out-of-pocket award.

### A. Legal Standards for Damages Awards

In several recent decisions, I have discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within the SPU. I fully adopt and hereby incorporate my prior discussion in Sections III and IV of *Leslie v. Sec'y Health & Hum. Servs*., No. 18-0039V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) and *Johnson v. Sec'y of Health & Hum. Servs.,* No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021), as well as Sections II and III of *Tjaden v. Sec'y of Health & Hum. Servs.,* No. 19-419V, 2021 WL 837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[9]

### B. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including all medical records, declarations, plus all filings submitted by both Petitioner and Respondent. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Citing six prior damages decision awarding between $85,000.00 and $110,000.00,[10] Petitioner requests an award of $95,000.00 for actual pain and suffering.

---

[9] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[10] *Young v. Sec'y of Health & Hum. Servs.*, No. 15-1241V, 2019 WL 396981 (Fed. Cl. Spec. Mstr. Jan. 4, 2019) ($100,000 in pain and suffering); *Dhanoa v. Sec'y of Health & Hum. Servs*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) (awarding $85,000.00 in past pain and suffering and $10,000.00 for future pain and suffering); *Cooper v. Sec'y of Health & Hum. Serv.*, No. 16-138V, 2018 WL 6288181*12 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 in pain and suffering); Kent v. Sec'y of Health & Human Servs., No. 17-0073V, 2019 WL 5579493 at *2 (Fed. Cl. Aug. 7, 2019) (awarding $80,000.00 in pain and suffering); *Binette v. Sec'y of Health & Hum. Servs.*, No. 16-731, 2019 WL 1552620

Mot. at 33-41; Reply at 6-7. She asserts that the severity of her injury is comparable to *Young, Dhanoa*, *Weber*, *Kent*, *Cooper*, and *Binette*. In particular, Petitioner emphasizes that she suffered from shoulder pain for over three years, sought treatment soon after her vaccination, and treated through physical therapy, and chiropractor treatments. Mot. at 38-41.

Respondent, by contrast, submits that an award of $55,000.00 is appropriate for pain and suffering (assuming entitlement is found). Opp. at 13-15. In Respondent's reading of the record, Petitioner suffered a comparatively minor injury, receiving only conservative treatment such as chiropractic care and six physical therapy sessions, but no surgery or injections. Opp. at 14. Further, approximately five months after her vaccination Petitioner was "largely back to normal." *Id.* Respondent cites to *Knauss v. Sec'y of Health & Hum. Serv.,* No. 16-1372V, 2018 WL 3432906 *(Fed. Cl. Spec. Mstr. May 23, 2018).* (awarding $60,000.00 for past pain and suffering) in support of his argument.

The medical records establish that Petitioner suffered a mild SIRVA for approximately five months, with some lingering pain for an additional three months thereafter. Petitioner initially reported arm pain on October 26, 2018, approximately one month after her vaccination. Ex. 2 at 7. Her pain was initially reported as 6-7 out of 10 with motions, but 3 out of 10 at rest. Ex. 4 at 267.

Petitioner attended six physical therapy sessions between November 21, 2018, and January 3, 2019. During that time, her pain and symptoms decreased and she "'improved significantly' since beginning therapy." *See* Ex. 6 at 12. By December 14, 2018, Petitioner's pain was described as only 1-3 out of 10 (*id*. 6-7), and she reported to NP Lester that she was at least 60-70% improved by December 21, 2018. Ex. 5 at 27. By January 3, 2019, Petitioner reported that she was "about '85%' back to normal" with pain levels described as 2 out of 10. By February 4, 2019, Petitioner reported her symptoms had vastly improved and her pain was only rated as 1 out of 10. Ex. 8 at 14. On February 18, 2019, Petitioner reported that she felt that she was "back to normal." Ex. 8 at 2. However, Petitioner reported in May that she experienced continued pain and weakness in her arm and shoulder. *See* Ex. 9 at 12 (describing her pain as 3 out of 10 and constant on May 30, 2019).[11] She also never underwent a surgical procedure, and overall, her treatment was fairly conservative.

---

*7 (Fed. Cl. Spec. Mstr. July 8, 2019); *Weber v. Sec'y of Health & Hum. Servs.*, No. 17-399V, 2019 WL 2521540 (Fed. Cl. Apr. 9, 2019) (awarding $85,000.00 in pain and suffering).

[11] Petitioner was treated for shoulder pain in 2020, however that may be tangentially related to her SIRVA. Ex. 12 at 4. Petitioner also treated various ailments including upper back, neck, and lower back pain through

I give less weight to reports of Petitioner's discomfort later in 2019, 2020, and 2021. Prior to that time, she reported an almost complete recovery, but in November of 2019 Petitioner reported pain since her HPV vaccine and was treated for mild or chronic radial nerve injury. Ex. 12 at 4. Her care with the chiropractor Erik Coombs from November 4, 2020, through March 25, 2021 also appears mostly unrelated as it involved Petitioner's upper back, neck, and lower back pain, but does not focus on her shoulder. Ex. 30 at 32, 61-84

These factors indicate that Petitioner's SIRVA was largely mild for approximately five months, with some lingering pain for an additional three months. Further, Petitioner's treatment was conservative and occurred over approximately nine months, featuring only six physical therapy sessions, numerous chiropractic visits, x-rays, but no steroid injections or surgery. While Petitioner did suffer for her injury, her experience was far less severe than what many other Program petitioners have faced.

Because of the above, the $95,000.00 requested by Petitioner exceeds what would be just compensation for her suffering. I note that the SIRVA cases cited by Petitioner involved more significant treatment over longer periods of time. For example, in *Cooper* the petitioner's treatment consisted of thirty-five physical therapy session over two years, and moderate pain reported for that whole time. *Cooper*, 2018 WL 6288181 at \*12. Similarly, the *Dhanoa* petitioner underwent two cortisone injections and twenty-three physical therapy sessions over seven months. *Dhanoa*, 2018 WL 1221922 at \*6. In contrast, here Petitioner attended only six physical therapy sessions over a six-week period, had no cortisone injections, and reported significant improvement soon after she began treating. Ex. 6 at 16-23.

However, I also disagree with Respondent that this case is most analogous to *Knauss,* 2021 WL 2550093 (awarding $60,000.00 for pain and suffering). While both Petitioner and the injured party in *Knauss* experienced a mild SIRVA with good recovery, the *Knauss* petitioner did not experience the same pain as reported here, and delayed seeking treatment for three months. *Id.* At \*7. In contrast, the evidence shows Petitioner was experiencing significant pain soon after her vaccination. I give credit to Petitioner's affidavit evidence detailing the initial pain she suffered and her initial reports rating her pain as 6-7 out of 10.

Petitioner argues that that her pain continued to persist for three years since the onset of her injury. Reply at 6. However, as discussed above, the period after November

---

March of 2021, however it is unclear if this treatment was a continuation of her SIRVA care. Ex. 30 at 32, 61-84.

of 2019 appears, at best, tangentially connected to her SIRVA, especially given that she reported feeling back to normal as early as February of 2019. I therefore give this evidence limited weight in calculating a proper pain and suffering award.

Taking all of the above into account, I find that $70,000.00 for pain and suffering is appropriate in this case.

### C. Unreimbursed Out-Of-Pocket Expenses

Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation ... determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer*, 1996 WL 147722, at *22-23.

Petitioner seeks $4,392.93 for medical expenses related to her shoulder. Mot. at 41-42. Respondent argues that worker's compensation paid for some of Petitioner's treatment, and that she has not provided documentation explaining why certain expenses were not covered. Opp. at 15. Petitioner responded that the worker's compensation claim was discontinued on January 22, 2019, and therefore all medical expenses incurred after that date are eligible for reimbursement through Petitioner's vaccine injury case. Reply at 8.

The expenses Petitioner seeks compensation for include care from May 2019 to February 2021. Mot. at 41-42. Certain records appear at least related to diagnosis, medical or other remedial care of Petitioner's SIRVA, and thus are compensable under the Vaccine Act. These include the costs incurred for care at Pro Physical Therapy ($300.00), FSOC Burnsville ($501.25), and Certified Medical Evaluations, P.A. ($380.40). Mot. at 41-42.

However, other treatments, including the chiropractic care, do not appear to have been associated with her SIRVA. For example, treatment at Apex Family Chiropractic (11 of the 24 items) are not solely, or even primarily, for Petitioner's arm, but include treatment for upper back pain and difficulty sitting down. *See* Ex. 9 at 4, 8, 10, 12 (describing complaints and problems addressed). Similarly, treatment at Clear Health Chiropractic was also for various ailments including "upper back pain up into neck, lower back pain down into legs". Ex. 30 at 30. Further, it is unclear what care was provided at the Fairview Heart Clinic on or about January 6, 2020, and how that was related to Petitioner's SIRVA. Therefore, based on the current record record, I cannot find that there is preponderant

evidence that Petitioner's chiropractic care or care provided at Fairview Heart Clinic is for her SIRVA, and thus they are not compensable under the Vaccine Act.

Therefore, based on the above, I award $1,181.65 for past unreimbursed expenses, based upon my calculation of the unreimbursed costs properly attributable to the SIRVA injury Petitioner experienced.

### VII.   Conclusion

In view of the record and other submissions of the parties, I find that there is preponderant evidence that Petitioner has satisfied the Table requirements for a SIRVA and is entitled to compensation.

I also find that, for all of the reasons discussed above and based on consideration of the record as a whole, **$70,000.00 represents a fair and appropriate amount of compensation for Ms. Guerrero actual pain and suffering. I also grant Ms. Hunt's request for $1,181.65 for past unreimbursed medical expenses.**[12]

Accordingly, I approve a Vaccine Program award in the total amount of **$71,181.65**, to be made to Petitioner. In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment herewith.[13]

**IT IS SO ORDERED.**

                                          <u>s/Brian H. Corcoran</u>
                                          Brian H. Corcoran
                                          Chief Special Master

---

[12] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[13] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.